**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **ANDREW STAUB and CANDRA STAUB,**<br><br>Plaintiffs,<br><br>vs.<br><br>**SOUTHEAST TOYOTA DISTRIBUTORS, LLC,**<br><br>Defendant. | Civil Action No. 3:26-cv-3802-SAL<br><br>**COMPLAINT**<br><br>(JURY TRIAL REQUESTED) |

The plaintiffs, Andrew Staub and Candra Staub, complaining of the defendant, Southeast Toyota Distributors, LLC, allege as follows:

**PRELIMINARY STATEMENT**

1. On March 29, 2025, Andrew Staub and Candra Staub paid $42,619.99 in cash for a used 2020 Toyota Highlander Platinum AWD that Southeast Toyota Distributors, LLC had designated "Toyota Gold Certified" and covered with a Toyota Certified Used Vehicle Limited Warranty naming Southeast Toyota as the warrantor.
2. The Vehicle was not what Southeast Toyota certified it to be. Before the sale, it had sustained extensive, long-term water intrusion that compromised its supplemental restraint system, its electrical system, its HVAC system, and its structural components. An independent inspection concluded that the Vehicle is a total loss that cannot be safely or economically repaired.
3. The plaintiffs gave Southeast Toyota written notice of the breach and demanded rescission. Southeast Toyota has not cured and has not responded in a manner satisfying that demand. The plaintiffs bring this action for breach of express warranty and breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., and for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et seq.

## PARTIES

4. Plaintiff Andrew Staub is an individual residing in Lexington County, South Carolina.
5. Plaintiff Candra Staub is an individual residing in Lexington County, South Carolina.
6. Defendant Southeast Toyota Distributors, LLC ("Southeast Toyota") is a limited liability company with its principal place of business at 100 Jim Moran Boulevard, Deerfield Beach, Florida 33442. Upon information and belief, none of its members is a citizen of South Carolina. Southeast Toyota distributes and warrants motor vehicles throughout the United States, including in South Carolina.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the plaintiffs' warranty claims arise under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.
8. The amount in controversy, computed on the basis of all claims to be determined in this suit, exceeds $50,000 exclusive of interest and costs; no individual claim is less than $25; and this action is not brought as a class action. Jurisdiction is therefore proper under 15 U.S.C. § 2310(d)(1)(B) and § 2310(d)(3).
9. This Court also has jurisdiction under 28 U.S.C. § 1332(a). The plaintiffs are citizens of South Carolina, Southeast Toyota is not a citizen of South Carolina, complete diversity exists between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.
10. This Court has supplemental jurisdiction over the plaintiffs' state law claim under 28 U.S.C. § 1367(a).
11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in South Carolina, including the sale of the Vehicle, the discovery of its defects, and the plaintiffs' dealings with Southeast Toyota and its agent. The plaintiffs reside in Lexington County, which lies within the Columbia Division.

## FACTS

### A. The Transaction and the Warranty

12. On or about March 29, 2025, the plaintiffs purchased a 2020 Toyota Highlander Platinum AWD, VIN 5TDFZRBH0LS047747 (the "Vehicle"), from Fred Anderson Toyota of Charleston, 2100 Savannah Highway, Charleston, South Carolina.
13. The Vehicle was sold and represented to the plaintiffs as "Toyota Gold Certified."
14. At the time of the sale, Southeast Toyota issued a Toyota Certified Used Vehicle Limited Warranty to the plaintiffs, Warranty Contract No. A11530152095, and designated itself as the warrantor under that warranty.
15. The plaintiffs paid $42,619.99 in cash for the Vehicle.
16. The plaintiffs purchased the Vehicle in reliance on the "Toyota Gold Certified" designation, on the express warranties Southeast Toyota issued, and on the representations that the Vehicle had been properly inspected, was free of defects, and was safe for family use.

### B. Southeast Toyota's Role as Warrantor and Principal

17. As the designated warrantor under the Toyota Certified Used Vehicle Limited Warranty, Southeast Toyota assumes responsibility for the quality, condition, and safety of the vehicles sold under that program.
18. Southeast Toyota administers and controls the Toyota Gold Certified program in South Carolina in conjunction with Toyota Motor Sales, U.S.A., Inc. Southeast Toyota sets the certification standards, the inspection requirements, the warranty terms, and the marketing representations associated with the program.
19. Fred Anderson Toyota of Charleston is an authorized Toyota dealer and acted as Southeast Toyota's agent in the certification, inspection, and sale of the Vehicle under the Toyota Gold Certified program. Its inspectors and managers acted on Southeast Toyota's behalf in certifying the Vehicle as meeting Southeast Toyota's standards and in issuing Southeast Toyota's warranty representations.

20. As warrantor and principal, Southeast Toyota is responsible for establishing the certification standards and quality requirements for the Toyota Gold Certified program.
21. Southeast Toyota is responsible for training its dealers on compliance with those standards and for authorizing them to certify vehicles and to issue warranty representations on its behalf.
22. Southeast Toyota is responsible for ensuring that vehicles certified under its name meet the represented standards before they are sold to consumers.
23. Southeast Toyota is responsible for honoring the warranty promises made under its name and authority.
24. At the time of the sale, Fred Anderson Toyota, acting as Southeast Toyota's agent, represented to the plaintiffs that the Vehicle had been thoroughly inspected in accordance with Southeast Toyota's Gold Certification standards, that it had been certified as meeting all mechanical, electrical, safety, and structural requirements, that it had been inspected for water intrusion and moisture damage, and that Southeast Toyota warranted it to be safe and reliable for family use.

**C. The Vehicle's True Condition**

25. Contrary to those representations, the Vehicle had sustained extensive, long-term water damage before it was sold to the plaintiffs. The damage compromised the supplemental restraint (airbag) system, the electrical system, the HVAC system, and structural components, and rendered the Vehicle a total loss.
26. Upon information and belief, the water intrusion was caused by loose and improperly secured roof rack rails that allowed water to enter the Vehicle over time.
27. Water accumulated in the Vehicle to such an extent that a body plug in the lower floor area had been removed, indicating an effort to drain the standing water rather than to repair the source of the leak.

28. The water damage affected multiple safety-critical systems, including the supplemental restraint system, the electrical connectors and wiring, the HVAC system, the seat mounting systems, structural components, and interior trim.
29. The Vehicle is also contaminated with mold and biological growth, including in the carpet and the HVAC ducting.
30. The cost of properly repairing the Vehicle exceeds its reasonable replacement value. The Vehicle cannot be safely or economically repaired.
31. The water damage, mold contamination, and corrosion are not new or recent. The roof rack leak, the removed body plug, and the extent of the corrosion and biological contamination are consistent with a chronic condition that existed for months and that predated Southeast Toyota's certification of the Vehicle.
32. A competent inspection consistent with Southeast Toyota's represented Gold Certification standards would have identified the loose roof rack rails, the missing body plug, the corrosion on the electrical connectors and wiring, the mold and biological contamination in the carpet and HVAC ducting, the rust and water staining on structural components and lower interior areas, and the moisture in the Vehicle's interior.

**D. Southeast Toyota's Knowledge of the Defects**

33. Southeast Toyota and its agent Fred Anderson Toyota had access to the Vehicle's complete service history through Toyota's dealer network, including a notation from a prior Toyota facility, Peter Boulware Toyota, that the Vehicle had sustained "water damage" and "mold" and was being sent to wholesale auction for those reasons.
34. The Toyota dealer service portal, which is accessible to Toyota dealers including Southeast Toyota's agent, contained that notation. The information was available to Fred Anderson Toyota before, during, and after the certification process.
35. Notwithstanding that information, Fred Anderson Toyota, acting under Southeast Toyota's authority and standards, performed only a cursory inspection, failed to

investigate the potential sources of water intrusion, and then certified the Vehicle as "Toyota Gold Certified" on Southeast Toyota's behalf.

36. Southeast Toyota either knew of the Vehicle's water damage, mold, and defective condition and authorized its certification anyway, or failed to exercise reasonable oversight and quality control over its agent's inspection and certification process.

**E. The Plaintiffs' Reliance and Discovery of the Damage**

37. The plaintiffs relied on the "Toyota Gold Certified" designation and on the express warranties Southeast Toyota issued in deciding to purchase the Vehicle. They selected this Vehicle because of that certification and warranty.

38. The plaintiffs drove and used the Vehicle for approximately one month, believing it to be safe and reliable.

39. On or about April 29, 2025, the plaintiffs discovered rust, corrosion, and water intrusion in the Vehicle and reported the problems to Fred Anderson Toyota.

40. Fred Anderson Toyota then performed an inadequate post-sale inspection. It tested only the windshield and the sunroof, did not test the other potential sources of water intrusion, and attributed the water intrusion to the plaintiffs' proximity to water and to their leaving the windows open. That explanation is contrary to the physical evidence identified in the subsequent expert inspection.

41. The plaintiffs asked the dealer to remedy the defect or rescind the sale. The dealer refused.

42. The plaintiffs retained K. Michael Bradshaw, Vice President of K&M Collision in Hickory, North Carolina, to inspect the Vehicle. On May 1, 2026, Mr. Bradshaw completed a detailed inspection confirming the extent of the water damage, the mold contamination, and that the Vehicle is a total loss.

43. On June 18, 2026, the plaintiffs sent written notice of the breach and a demand for rescission to Southeast Toyota by certified mail at its principal place of business, affording Southeast Toyota notice of the breach and an opportunity to cure.

44. Southeast Toyota has not cured the breach and has not responded in a manner satisfying the plaintiffs' demand for rescission and restitution.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.**

45. The plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

46. The plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3), the Vehicle is a "consumer product" within the meaning of 15 U.S.C. § 2301(1), and Southeast Toyota is a "supplier" and a "warrantor" within the meaning of 15 U.S.C. § 2301(4) and § 2301(5).

47. Southeast Toyota issued a written warranty to the plaintiffs, the Toyota Certified Used Vehicle Limited Warranty, Contract No. A11530152095, and identified itself as the warrantor. That warranty is a "written warranty" as defined by 15 U.S.C. § 2301(6).

48. The written warranty, the "Toyota Gold Certified" designation, and the representations made by Southeast Toyota's agent at the time of sale together constituted an express warranty that the Vehicle had been thoroughly and competently inspected and met Southeast Toyota's Gold Certification standards for safety, reliability, and condition.

49. That express warranty included the representation that the Vehicle was free from known defects affecting its safety systems, including the supplemental restraint system and the electrical system.

50. That express warranty included the representation that the Vehicle was free from water intrusion, water damage, mold contamination, and related moisture problems.

51. That express warranty included the representation that the Vehicle was suitable for use as a safe and reliable family vehicle and would perform as represented without requiring major repairs or remediation.
52. A vehicle that has sustained extensive long-term water damage affecting its safety, electrical, and structural systems, and that is contaminated with mold, does not meet the standards of a "Toyota Gold Certified" vehicle. Such a vehicle is not safe, is not reliable, and is not suitable for the purposes represented.
53. Southeast Toyota breached the express warranty by issuing the Toyota Certified Used Vehicle Limited Warranty and the Gold Certified designation for a Vehicle that did not meet the inspection standards represented, did not meet the safety standards represented, was not free of the defects represented, was not suitable for the purposes represented, and cannot be safely or economically repaired.
54. The plaintiffs gave Southeast Toyota notice of the breach and a reasonable opportunity to cure, as set forth above and as contemplated by 15 U.S.C. § 2310(e).
55. Southeast Toyota failed to cure the breach.
56. As a direct and proximate result of Southeast Toyota's breach of the express warranty, the plaintiffs are entitled to rescission and to recover the purchase price of $42,619.99, together with consequential damages, incidental damages, costs, and attorneys' fees under 15 U.S.C. § 2310(d).

## SECOND CAUSE OF ACTION
## Breach of the Implied Warranty of Merchantability
## 15 U.S.C. § 2301 et seq.; S.C. Code Ann. § 36-2-314

57. The plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.
58. An "implied warranty" under the Magnuson-Moss Warranty Act is an implied warranty arising under State law in connection with the sale by a supplier of a written warranty. 15 U.S.C. § 2301(7).

59. Southeast Toyota is a merchant with respect to motor vehicles. In connection with the sale of the Vehicle, there arose an implied warranty that the Vehicle was merchantable, that is, fit for the ordinary purposes for which used motor vehicles are used. S.C. Code Ann. § 36-2-314.
60. The ordinary purposes for which a used motor vehicle is used include safe operation on public roads.
61. Those purposes include the protection of occupants by functioning safety systems, including the supplemental restraint system and the seat mounting systems.
62. Those purposes include protection from water intrusion and mold contamination.
63. Those purposes include reliable performance without the imminent need to repair or replace core systems.
64. Those purposes include freedom from defects that render the vehicle unsafe or unreliable.
65. The Vehicle does not meet these standards. A vehicle with extensive water damage affecting its safety, electrical, and structural systems, contaminated with mold, and determined on inspection to be a total loss that cannot be safely or economically repaired is not merchantable.
66. Southeast Toyota breached the implied warranty of merchantability. The Vehicle was not fit for ordinary use, could not be operated safely as represented, would not pass without objection in the trade under the contract description, was subject to hidden defects affecting core systems, and posed health and safety risks arising from mold contamination and water-damaged electrical components.
67. Because Southeast Toyota made a written warranty to the plaintiffs, it may not disclaim, modify, or limit the duration of the implied warranty of merchantability. 15 U.S.C. § 2308(a).
68. As a direct and proximate result of Southeast Toyota's breach of the implied warranty of merchantability, the plaintiffs are entitled to rescission and to recover the purchase

price of $42,619.99, together with consequential damages, incidental damages, costs, and attorneys' fees under 15 U.S.C. § 2310(d).

**THIRD CAUSE OF ACTION**
**Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10 et seq.**

69. The plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

70. The South Carolina Unfair Trade Practices Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

71. Southeast Toyota's certification, warranting, and marketing of used motor vehicles in South Carolina is conduct in trade or commerce within the meaning of the Act.

72. Southeast Toyota engaged in an unfair and deceptive act or practice by representing that the Vehicle was "Toyota Gold Certified" and met the inspection and quality standards associated with that certification when the Vehicle had sustained extensive long-term water damage, was contaminated with mold, and had defects affecting its safety systems.

73. Southeast Toyota engaged in an unfair and deceptive act or practice by issuing a written warranty certifying the Vehicle's condition and fitness for use when it knew or should have known that the Vehicle was damaged and unsafe.

74. Southeast Toyota engaged in an unfair and deceptive act or practice by failing to disclose the defects reflected in the Vehicle's service history, including the notation of prior water damage and mold.

75. Southeast Toyota engaged in an unfair and deceptive act or practice by authorizing and ratifying the certification of a defective vehicle as meeting its own standards.

76. These acts and practices are deceptive because they are likely to mislead consumers about the condition, safety, and fitness of the vehicles Southeast Toyota certifies. A

consumer purchasing a vehicle that the warranty issuer represents to be "Toyota Gold Certified" reasonably relies on that representation and on the accompanying promise that the vehicle is safe and reliable.

77. Southeast Toyota's acts and practices adversely affected the public interest. The Toyota Gold Certified program is a standardized certification and warranty program that Southeast Toyota administers across South Carolina, and the inspection and certification procedures that produced the Vehicle's certification create a potential for repetition of the same conduct as to other South Carolina consumers.

78. The plaintiffs relied on Southeast Toyota's representations in deciding to purchase the Vehicle. They would not have purchased the Vehicle, or would have paid substantially less for it, had they known its true condition.

79. As a direct and proximate result of Southeast Toyota's unfair and deceptive acts and practices, the plaintiffs suffered an ascertainable loss of money and property, including the $42,619.99 purchase price and related out-of-pocket costs.

80. Southeast Toyota's violation of the Act was willful or knowing. Southeast Toyota either knew of the Vehicle's water damage and mold before it was certified, or disregarded the information available to it and to its agent through the Toyota dealer service portal and through a competent inspection. The plaintiffs are therefore entitled to three times their actual damages and to reasonable attorneys' fees and costs. S.C. Code Ann. § 39-5-140(a).

**DAMAGES**

81. The plaintiffs are entitled to rescission of the purchase and to restitution of the full purchase price of $42,619.99. 15 U.S.C. § 2310(d).

82. The plaintiffs have incurred consequential damages, including the cost of investigating the Vehicle's condition and obtaining an expert inspection, the cost of attempting to

have the Vehicle repaired, and the loss of use and of the benefit of the Vehicle as represented.

83. The plaintiffs have incurred further consequential damages in the form of disruption to their transportation and daily activities and the additional cost of obtaining a replacement vehicle.

84. The plaintiffs have incurred incidental damages, including the costs and expenses of pursuing this claim and the time and travel costs of dealing with the Vehicle's defects.

85. The plaintiffs are entitled to recover reasonable attorneys' fees and costs under 15 U.S.C. § 2310(d)(2) and S.C. Code Ann. § 39-5-140(a).

86. The plaintiffs are entitled to prejudgment and postjudgment interest at the maximum rate allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs respectfully request that this Court enter judgment in their favor and against the defendant, Southeast Toyota Distributors, LLC, as follows:

(a) for rescission of the purchase of the Vehicle and restitution of the purchase price of $42,619.99;

(b) for actual damages, including consequential and incidental damages, on each cause of action;

(c) for three times the plaintiffs' actual damages on the third cause of action pursuant to S.C. Code Ann. § 39-5-140(a);

(d) for reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 2310(d)(2) and S.C. Code Ann. § 39-5-140(a);

(e) for prejudgment and postjudgment interest at the maximum rate allowed by law; and

(f) for such other and further relief as this Court deems just and proper.

**JURY DEMAND**

The plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

Respectfully submitted,

**DAVE MAXFIELD, ATTORNEY, LLC**

s/ David A. Maxfield
______________________________

Dave Maxfield, Esq., Fed. ID No. 6293
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

**ATTORNEY FOR PLAINTIFFS**

September 1, 2026
Columbia, South Carolina